| | | |
|---|---|---|
| KAREN FANNIE HARRISON<br>2448 Shellcove Court<br>Waldorf, Maryland 20601 | * | IN THE<br>UNITED STATES DISTRICT COURT |
| Plaintiff, | * | FOR THE |
| v. | * | DISTRICT OF MARYLAND |
| GOVERNMENT EMPLOYEES<br>INSURANCE COMPANY<br>One Geico Plaza<br>Washington, DC 20076 | *<br>* | |
| Defendant. | * | Case No.: _8:19-cv-01235______________ |
| Serve On Resident Agent: | *<br>* | |
| The Corporation Trust, Incorporated<br>2405 York Road, Suite 201<br>Lutherville Timonium, Maryland 21093-2264 | *<br>* | |

* * * * * * * * * * * * *

**COMPLAINT**

COMES NOW, Karen F. Harrison, by and through her attorneys, Paul V. Bennett, Esq., Elizabeth A. Marcus-Wenger, Esq., and Bennett & Ellison, P.C., and hereby sues Government Employees Insurance Company ("Geico") and in support thereof states:

**JURISDICTION AND VENUE**

1. This court has jurisdiction pursuant to the Americans with Disabilities Act ("ADA") claim pursuant to 42 U.S.C. §§ 12101, et seq.

2. This court has jurisdiction pursuant to Md. Code Ann., State Government Article § 20-606.

3. This court has jurisdiction pursuant to Md. Code., Ann., Labor and Employment Article § 9-1105 (2013) and under the common law of Maryland.

4. That all actions complained of herein took place in Montgomery County, Maryland.

5. Defendant, Geico, has an office located in Montgomery County, Maryland.

6. That at all times relevant hereto, Defendant Geico, was a business entity employing fifteen (15) or more persons, and is an “employer” within the meaning of the ADA, 42 U.S.C. §§ 12101, et seq, Md. Code Ann., State Government Article, § 20-601(d) (2016), and Md. Code Ann., Labor and Employment Article § 9-201 (2013).

7. In accordance with the ADA, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on March 8, 2018. On January 9, 2019, a Notice of Right to Sue was issued by the U.S. Equal Employment Opportunity Commission. Therefore, Plaintiff has properly exhausted her administrative remedies before timely filing suit.

## FACTS COMMON TO ALL COUNTS

8. Plaintiff was hired by Geico on or about October 1, 1997. At all relevant times, she was employed as a Senior Programmer Analyst with an annual salary of approximately one hundred thousand dollars ($100,000.00) and employment benefits including health insurance, vacation time, sick leave, 401(k), life insurance, annual profit-share bonus, and other benefits.

9. At all times during Plaintiff’s employment, Plaintiff received a satisfactory or better on her performance appraisals. Therefore, Plaintiff always met or exceeded her employer’s legitimate expectations.

10. Beginning around 2007, Plaintiff served on the Production Support Team. In that capacity, Plaintiff was tasked with responding to pages or calls regarding problems with Geico’s internet-based applications. As part of her duties, Plaintiff would be on-call for twenty-four

hours per day, seven days per week for at least one week per month in order to assist with any internet-based application issues promptly. Plaintiff worked an alternate work schedule ("AWS") for many years. This schedule consisted of working nine business days at the office followed by one day off.

11. On or about November 9, 2015, Plaintiff fell down twelve (12) concrete steps at her place of employment. She suffered a fractured disk and developed a herniated and bulging disk in her back. Subsequently, Plaintiff was treated by several medical providers, including an orthopedic doctor that Plaintiff was referred to by Geico's workers compensation company, Broadspire.

12. While Plaintiff was on leave to recover for her injuries, she filed a worker's compensation claim.

13. On or about January 25, 2016, Plaintiff returned to work. At that time, Plaintiff's orthopedic doctor ordered that Plaintiff be given an ergonomic chair, a sit-to-stand work station, and a light-duty schedule with a maximum of four hours of work per day and a maximum of twenty hours every two weeks. The doctor specifically ordered a schedule of working twelve hours during the first week and eight hours during the second week, continuing this rotation moving forward. Geico was provided with all doctor's orders prior to Plaintiff's return to work.

14. When Plaintiff returned to work, she was not provided an ergonomic chair nor a sit-to-stand workstation. Instead, she had to complain to human resources regarding the lack of accommodation.

15. By February 14, 2016, as Defendant had failed to provide one for her, Plaintiff purchased a sit-to-stand platform that allowed her to stand and type. Defendant ultimately reimbursed Plaintiff for this expense in, approximately, April 2016.

16. In August 2016, Plaintiff was involuntarily transferred to the Internet Testing/Verification Test Team. She received notice via email. Her duties changed substantially in that she was then testing internet-based applications.

17. In August 2016, Plaintiff was finally provided the ergonomic chair and workstation, which had been ordered by her doctor in January 2016.

18. From September 22, 2016 through October 14, 2016, Plaintiff received temporary partial disability benefits through her worker's compensation claim, after exhausting all accrued vacation and sick leave.

19. On or about October 10, 2016, Plaintiff sent an email to Cory Belle and Jyoti Cox in Human Resources outlining her complaints about the failure to accommodate and Human Resources' dilatory response to her requests that were made with supporting documentation from her doctor.

20. Beginning in October 2017, Plaintiff's supervisor was Josh McDonald (no known disability).

21. In October 2017, Plaintiff coordinated with her lead, Jyoti Arora (no known disability), to take off time around Thanksgiving.

22. Shortly thereafter, Mr. McDonald contacted Plaintiff to explain that if she took the time off that had been approved, it would be considered "failure to report." Mr. McDonald did not explain the repercussions of "failure to report." Plaintiff took off the approved time around Thanksgiving.

23. A few weeks after Thanksgiving, Plaintiff was contacted Mr. McDonald to meet. Mr. McDonald led Plaintiff to Human Resources where they were joined by an individual representing Human Resources (no known disability). At that time, Plaintiff was notified that she

was being noted as having failed to report during the period of approved leave around Thanksgiving 2016.

24. Plaintiff, again, began receiving temporary partial disability benefits on March 18, 2017 through her worker's compensation claim.

25. Around December 2017, Defendant claimed that, in order to accommodate Plaintiff with the schedule ordered by her doctor, it would have to create a new position for her. At that time, Defendant: (a) lowered her salary by $7,000.00; (b) lowered her job grade; (c) removed her indoor parking spot and, later, provided with instructions to obtain a handicap placard. Additionally, Defendant did not provide Plaintiff with a job description for her new position.

26. Plaintiff retired in December 2017 in order to avoid any further adverse job actions. However, as a result of her constructive discharge and Defendant decreasing her salary, she now receives less retirement benefits on a monthly basis, which will continue for the rest of her life. Plaintiff received temporary partial disability benefits through her last day of employment with Defendant. Subsequent to her constructive discharge, Plaintiff had a hearing regarding her worker's compensation claim before the Workers' Compensation Commission.

## COUNT I
## DISABILITY DISCRIMINATION
## (Disparate Treatment)
## Americans with Disabilities Act of 1990, as amended
## 42 U.S.C. § 12101, et seq.

27. Plaintiff hereby restates and incorporates Paragraphs 1 through 26 of this Complaint as though fully set forth herein.

28. Title I of the ADA, 42 U.S.C. §§ 12111-12117, prohibits discrimination against disabled individuals in the terms, conditions, and privileges of employment.

29. Defendant is a "covered entity" and "employer" under Title I of the ADA, 42 U.S.C. § 12111(2) and (5) respectively.

30. Plaintiff was qualified for the position she formerly held and was performing her job duties at a level that met or exceeded Defendant's legitimate expectations.

31. At all relevant times herein, Plaintiff suffered from a "disability" as that term is defined in the Americans with Disabilities Act, as she suffered from a condition, namely a back injury, that resulted in her being unable to sit or stand for long periods of time and caused her significant pain and discomfort preventing her from performing her daily functions in a typical fashion.

32. Plaintiff was able to carry out the essential functions of her position with or without reasonable accommodation.

33. On or about January 25, 2016, Plaintiff's doctor provided notice of Plaintiff's needed accommodations, namely a reduced schedule, ergonomic chair, and sit-to-stand work station.

34. That similarly-situated employees outside the protected class, including by not limited to other individuals in her department, namely Lamont Warren (Production Support), Martha Hartley (Production Support), Vidhya Chandrakanthan (Testing Department), Lev Fishman (Testing Department), Shawn Liu (Test Department), Fisseha Neria (Testing Department), Li Su (Testing Department), and Bobby Espinoza (Testing Department), individuals without disabilities and employed by the Defendant, were not subjected to the same kind of severe adverse employment actions that Plaintiff endured, including, but not limited to: involuntary transfer from her department and constructive discharge.

35. As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered lost wages and benefits, retirement benefits, emotional and additional physical distress, incurred attorney's fees, and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT II**
**DISABILITY DISCRIMINATION**
**(Failure to Accommodate)**
**Americans with Disabilities Act of 1990, as amended**
**42 U.S.C. § 12101, et seq.**

36. Plaintiff hereby restates and incorporates Paragraphs 1 through 26 of this Complaint as though fully set forth herein.

37. At all times mentioned herein, Plaintiff suffered from a "disability" as that term is defined in the Americans with Disabilities Act, as she suffered from back pain that necessitated a modified schedule and equipment.

38. Defendant was made aware of the disability when Plaintiff's doctor provided documentation to Defendant prior to Plaintiff's return to work following her injury and developing her disability on or about January 25, 2016.

39. Plaintiff is a qualified individual with a disability who is able to perform the essential job functions of the position of a Senior Programmer Analyst with Defendant.

40. Plaintiff requested a reasonable accommodation on or about January 25, 2016 when she requested a modified schedule, ergonomic chair, and sit-to-stand work station. This request was made through her treating physician. The work schedule was originally accommodated, but the equipment was delayed by several months and required Plaintiff's further action to ensure it was provided.

41. Defendant made no effort to engage in timely discussions with Plaintiff as to possible accommodations rather than delaying or reneging on Plaintiff's accommodations, contrary to the mandates of the Americans with Disabilities Act. Further, the American with Disabilities Act required that this discussion be prompt.

42. Defendant violated Plaintiff's rights by refusing to afford her a reasonable accommodation request, as required by the Americans with Disabilities Act, to allow her to perform essential job functions of the position.

43. That the actions of Defendant as set forth above, has caused and will continue to cause Plaintiff to suffer emotional distress, humiliation, mental anguish, incur attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT III**
**RETALIATION**
**(Adverse Actions and Protected Activity Deterrents)**
**Americans with Disabilities Act of 1990, as amended**
**42 U.S.C. §§ 12101 et seq.**

44. Plaintiff hereby restates and incorporates Paragraphs 1 through 26 of this Complaint as though fully set forth therein.

45. On or about January 25, 2016, Plaintiff requested a modified schedule and work equipment due to her injury on-the-job to her back. This request was made by her treating physician. While the modified schedule was initially granted, the modified work equipment was not provided without undue delay and follow-up by Plaintiff.

46. Plaintiff was then involuntarily transferred from her department on or about August 2016 and was constructively discharged in December 2017.

47. The aforementioned legally protected activities were known by management to have occurred.

48. The subsequent hostile work environment, denial of request for assistance, and revised position as set forth in the above-referenced facts common to all counts amounted to illegal retaliation.

49. That the aforementioned acts of retaliation for complaining of discrimination and retaliation constitute unlawful employment practices pursuant to Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq. (2000).

50. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon a disability.

**COUNT IV**
**CONSTRUCTIVE DISCHARGE**
**Americans with Disabilities Act of 1990, as amended**
**42 U.S.C. §§ 12101 et seq.**

51. Plaintiff hereby restates and incorporates Paragraphs 1 through 26 of this Complaint as though fully set forth herein.

52. Plaintiff's working conditions changed dramatically beginning in January 25, 2016 when she returned after her injury. This included, but was not limited to not providing the necessary modified working equipment, involuntarily transferring her to another department, lowering her salary, and labeling her with "failure to report" after approved time off.

53. Through these changes, Defendant deliberately created intolerable working conditions and forced Plaintiff to retire.

54. That the aforementioned acts constitute unlawful practices pursuant to Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq. (2000).

55. That the effect of the practices complained of above was to deprive Plaintiff equal employment opportunities and otherwise adversely affect her status as an employee because of her disability. Specifically, Plaintiff was forced to retire as her employer refused to address her concerns and instead decreased her pay.

56. That the unlawful employment practices complained of above were intentional.

57. That that hostile and discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings, retirement pay, severe emotional distress, humiliation, and mental anguish.

**COUNT V**
**DISABILITY DISCRIMINATION**
**(Disparate Treatment)**
**MARYLAND CODE ANN.,**
**STATE GOVERNMENT ARTICLE, §§ 20-601(a)-(d), 20-606(a)(4), 20-609**

58. Plaintiff hereby restates and incorporates Paragraphs 1 through 26 of this Complaint as though fully set forth herein.

59. Maryland Code Ann., State Government Article, § 20-609 prohibits discrimination against disabled individuals in the terms, conditions, and privileges of employment.

60. Defendant is a "covered entity" and "employer" Maryland Code Ann., State Government Article, § 20-609.

61. Plaintiff was qualified for the position she formerly held and was performing her job duties at a level that met or exceeded Defendant's legitimate expectations.

62. At all relevant times herein, Plaintiff suffered from a "disability" as that term is defined in the Americans with Disabilities Act, as she suffered from a condition, namely a back injury, that resulted in her being unable to sit or stand for long periods of time and caused her

significant pain and discomfort preventing her from performing her daily functions in a typical fashion.

63. Plaintiff was able to carry out the essential functions of her position with or without reasonable accommodation.

64. On or about January 25, 2016, Plaintiff's doctor provided notice of Plaintiff's needed accommodations, namely a reduced schedule, ergonomic chair, and sit-to-stand work station.

65. That similarly-situated employees outside the protected class, including by not limited to other individuals in her department, namely Lamont Warren (Production Support), Martha Hartley (Production Support), Vidhya Chandrakanthan (Testing Department), Lev Fishman (Testing Department), Shawn Liu (Test Department), Fisseha Neria (Testing Department), Li Su (Testing Department), and Bobby Espinoza (Testing Department), individuals without disabilities and employed by the Defendant, were not subjected to the same kind of severe adverse employment actions that Plaintiff endured, including, but not limited to: involuntary transfer from her department and constructive discharge.

66. As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered lost wages and benefits, retirement benefits, emotional distress, incurred attorney's fees, and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT VI**
**DISABILITY DISCRIMINATION**
**(Failure to Accommodate)**
**Maryland Code Ann.,**
**State Government Article, §§ 20-601(a)-(d), 20-606(a)(4), 20-609**

67. Plaintiff hereby restates and incorporates Paragraphs 1 through 26 of this Complaint as though fully set forth herein.

68. At all times mentioned herein, Plaintiff suffered from a "disability" as that term is defined in the Americans with Disabilities Act, as she suffered from a back injury that necessitated a modified schedule and equipment.

69. Defendant was made aware of the disability when Plaintiff's doctor provided documentation to Defendant prior to Plaintiff's return to work following her injury and developing her disability on or about January 25, 2016.

70. Plaintiff is a qualified individual with a disability who is able to perform the essential job functions of the position of a Senior Programmer Analyst with Defendant.

71. Plaintiff requested a reasonable accommodation, with the support of documentation from her physician, on or about January 25, 2016 when she requested a modified scheduled, ergonomic chair, and sit-to-stand work station. This request was made through her treating physician. The work schedule was originally accommodated, but the equipment was delayed by several months and required Plaintiff's further action to ensure it was provided.

72. Defendant made no effort to engage in timely discussions with Plaintiff as to possible accommodations rather than delaying or reneging on Plaintiff's accommodations, contrary to the mandates of the Americans with Disabilities Act. Further, the American with Disabilities Act required that this discussion be prompt.

73. Defendant violated Plaintiff's rights by refusing to afford her a reasonable accommodation request, as required by the Americans with Disabilities Act, to allow her to perform essential job functions of the position.

74. That the actions of Defendant as set forth above, has caused and will continue to cause Plaintiff to suffer emotional distress, humiliation, mental anguish, incur attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT VII**
**RETALIATION**
**(Adverse Actions and Protected Activity Deterrents)**
**MARYLAND CODE ANN.**
**STATE GOVERNMENT ARTICLE, § 20-606**

75. Plaintiff hereby restates and incorporates Paragraphs 1 through 26 of this Complaint as though fully set forth therein.

76. On or about January 25, 2016, Plaintiff requested a modified schedule and work equipment due to her injury on-the-job to her back. This request was made by her treating physician. While the modified schedule was initially granted, the modified work equipment was not provided without undue delay and follow-up by Plaintiff.

77. Plaintiff was then involuntarily transferred from her department on or about August 2016 and was constructively discharged in December 2017.

78. The aforementioned legally protected activities were known by management to have occurred.

79. The subsequent hostile work environment, denial of request for assistance, and revised position as set forth in the above-referenced facts common to all counts amounted to illegal retaliation.

80. That the aforementioned acts of retaliation for complaining of discrimination and retaliation constitute unlawful employment practices pursuant to Maryland Code Ann., State Government Article, § 20-609.

81. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon a disability.

**COUNT VIII**
**CONSTRUCTIVE DISCHARGE**
**Maryland Code Ann.,**
**State Government Article, §§ 20-601, et seq.**

82. Plaintiff hereby restates and incorporates Paragraphs 1 through 26 of this Complaint as though fully set forth herein.

83. Plaintiff's working conditions changed dramatically beginning in January 25, 2016 when she returned after her injury. This included, but was not limited to not providing the necessary modified working equipment, involuntarily transferring her to another department, lowering her salary, labeling her with "failure to appear" after approved time off, and removing her indoor parking slot that she held for nineteen years.

84. Through these changes, Defendant deliberately created intolerable working conditions and forced Plaintiff to retire.

85. That the aforementioned acts constitute unlawful practices pursuant Maryland Code Ann., State Government Article, § 20-609.

86. That the effect of the practices complained of above was to deprive Plaintiff equal employment opportunities and otherwise adversely affect her status as an employee because of her disability. Specifically, Plaintiff was forced to retire as her employer refused to address her concerns and instead decreased her pay.

87. That the unlawful employment practices complained of above were intentional.

88. That that hostile and discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings, retirement pay, severe emotional distress, humiliation, and mental anguish.

**COUNT IX**
**CONSTRUCTIVE DISCHARGE**
**Maryland Code Ann.,**
**Labor and Employment, §9-1105**

89. Plaintiff restates and incorporates Paragraphs 1 through 26 of this Complaint as though fully set forth herein.

90. Plaintiff's working conditions changed dramatically beginning in January 25, 2016 when she returned after her injury having filed a worker's compensation claim. This change included, but was not limited to, not being provided the necessary modified working equipment, being involuntarily transferred to another department, her salary was lowered, she was noted as "failure to appear" after approved time off, and her indoor parking slot that she held for nineteen years was removed.

91. Through these changes, Defendant deliberately created intolerable working conditions and forced Plaintiff to retire.

92. Discharging Plaintiff because she filed a worker's compensation claim qualifies as a "prohibited act" under the Maryland Code Labor and Employment, § 9-1105.

93. Said termination was undertaken knowingly, with malice and reckless disregard for Plaintiff's rights and/or Defendant's obligations under the law.

94. As a result of her discharge, Plaintiff has suffered lost wages and benefits, emotional distress, attorneys' fees, and litigation costs.

**COUNT X**
**RETALIATION**
**(Adverse Actions and Protected Activity Deterrents regarding Workers' Compensation Claims)**
**Maryland Code Ann.,**
**Labor and Employment, §9-1105 and Maryland Common Law**

95. Plaintiff restates and incorporates Paragraphs 1 through 26 of this Complaint as though fully set forth herein.

96. Maryland Code, Labor and Employment, § 9-1105 prohibits the discharge of an employee from employment solely for filing a worker's compensation claim. There exists, therefore, a clear mandate of public policy to protect an employee's right to file a worker's compensation claim and encourage employees to seek compensation for work-related injuries. Thus, it violates a clear mandate of public policy of the State of Maryland to retaliate against an employee for filing a worker's compensation claim.

97. After falling down stairs as Defendant's office where Plaintiff was employed on or about November 9, 2015, Plaintiff filed a worker's compensation claim.

98. Consequently, Plaintiff was subjected to retaliatory employment practices after she filed her claim, including without limitation: not being provided the necessary modified working equipment, being involuntarily transferred to another department, her salary was lowered, she was noted as "failure to appear" after approved time off, her indoor parking slot that she held for nineteen years was removed, and she was constructively discharged.

99. That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

100. As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, attorney's fees and litigation costs.

**PRAYER FOR DAMAGES**

WHEREFORE, for the foregoing reasons, Karen F. Harrison, Plaintiff, demands judgment against Defendant, Geico, as follows:

a. Lost wages in the amount of approximately $233,000.00;

b. Damages for her emotional distress and mental anguish in the amount of $150,000.00;

c. Prejudgment and post judgment interest;

d. Award attorney's fees and costs, including expert witness fees, as allowed by law;

e. Award past and future economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, back pay and lost benefits, COBRA payments incurred by Plaintiff, front pay, and special damages comprised in part of, but not limited to, past and future costs of borrowing funds to meet financial obligations, and past and future out-of-pocket pecuniary losses;

f. Award past and future non-economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, lost earnings capacity, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, and inconvenience;

g. And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully Submitted,

______/s/_______________________
Paul V. Bennett, Esq. (Bar No. 10324)
Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: pbennett@belawpc.com
*Attorney for Plaintiff*

_____/s/____________________________________
Elizabeth A. Marcus-Wenger, Esq. (Bar No. 30123)
Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: emarcuswenger@belawpc.com
*Attorney for Plaintiff*

**DEMAND FOR JURY TRIAL**

Plaintiff, Karen F. Harrison, by and through her attorneys, Paul V. Bennett, Esq., Elizabeth A. Marcus-Wenger, Esq., and Bennett & Ellison, P.C., hereby demands that this above-captioned matter be tried before a jury on all issues so triable.

Respectfully Submitted,

____/s/________________________
Paul V. Bennett, Esq.
Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: pbennett@belawpc.com
*Attorney for Plaintiff*

______/s/_____________________________
Elizabeth A. Marcus-Wenger, Esq.
Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: emarcuswenger@belawpc.com
*Attorney for Plaintiff*