IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| KAREN FANNIE HARRISON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-19-1235 |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | | |

******
# MEMORANDUM OPINION

Pending in this disability discrimination action is the motion for summary judgment filed by Defendant Government Employees Insurance Company ("Geico"). ECF No. 36. The issues are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendant's motion is GRANTED.

## I.   BACKGROUND

Plaintiff Karen Harrison ("Harrison") worked for Geico as a Senior Programmer Analyst in Chevy Chase, Maryland for over twenty years. ECF No. 36-9. For most of her time at Geico, Harrison performed "analysis and programming of high complexity" for various software applications, trained other team members, and was on call "24/7" for production support. ECF No. 36-5 at 2-3.

### A.   Workplace injury and leaves of absence

On November 9, 2015, Harrison suffered a back injury after she reportedly fell down the stairs at work. ECF No. 36-6 at 12. Harrison requested a leave of absence under the Family Medical Leave Act through January 12, 2016, which Geico approved. *Id.* at 14, 16. During her

leave of absence, which coincided with the holidays, Harrison traveled to California. *Id.* at 16. Geico thereafter approved two additional leave requests. *Id.* at 17-20. Harrison ultimately returned to work on January 27, 2016. *Id.* at 20.

When she returned, Harrison submitted a doctor's note that documented her need for certain workplace modifications to accommodate her back injury. *Id.* at 20-23. The physician recommended that Harrison no longer be on call 24/7 and that her schedule be modified from 9.5 hours per day, five days a week, to no more than four hours per day and alternating between two- and three-day work weeks. *Id.* The doctor recommended this "light duty" schedule continue through April 30, 2016. *Id.* at 23-24. Geico granted Harrison these accommodations through May 12, 2016. *Id.* at 26-27. And in June, Harrison submitted another physician note recommending that she remain on light duty "until further notice." Geico also granted this request. *Id.* at 27-30.

### B.   Request for workstation and chair

In January 2016, while still on leave, Harrison also requested that Geico provide her with an adjustable chair and sit/stand workstation. ECF No. 36-21; ECF No. 36-22; ECF No. 36-23; ECF No. 36-24. On January 25, 2016, two days before her return to work, Harrison asked only about obtaining a "mobile desk station." ECF No. 36-25. Although company administrators approved Harrison's request that same month, February passed without Harrison receiving the desktop or workstation. As a result, Harrison purchased her own adjustable desktop and then sought reimbursement from Geico. ECF No. 36-27. Geico reimbursed her in April. ECF No. 36-73; ECF No. 38-1 at 4.

On February 19, 2016, Harrison contacted Geico's leave administrator regarding her request for a chair with "strong lumbar support." ECF No. 36-27. Geico's Real Estate and

Facilities Management ("REFM") department opened an inquiry on February 24, 2016, and on March 1, asked Harrison to specify the kind of chair she wanted. ECF No. 36-32. Harrison did not respond until March 14 and, at that time, reiterated her request for a chair with "strong lumbar support." *Id*. REFM responded that her current chair was "one of the best" in terms of support and adjustment and so it would need to research options to see what "they could come up with that is better on lumbar." *Id*. In early April, REFM advised Harrison that it was "not aware of any other options" and asked her to provide "specific information" from her healthcare provider as to what "dimensions of the chair, make, and model" would best meet her needs. ECF No. 36-32 & ECF No. 36-34. Harrison replied, on April 11, 2016, that her doctor "doesn't write prescriptions or make recommendations for chairs." ECF No. 36-34.

That same day, Geico arranged for a third-party consultant, Willis Towers Watson ("WTW"), to perform an ergonomic evaluation for Harrison. ECF No. 36-35. Working around Harrison's limited schedule, WTW assessed Harrison's needs on April 20, 2016, and recommended a specific chair and adjustable workstation. ECF No. 36-36. A demo chair arrived on May 2, 2016, and Harrison "liked the chair." ECF No. 36-38. Geico purchased the chair for Harrison on May 28, 2016. ECF No. 36-39 & ECF No. 36-41. The chair was delivered to Geico on June 10, 2016, but did not reach Harrison until August 17, 2016. ECF No. 36-41; ECF No. 36-43; ECF No. 36-47.

On June 20, 2016, Harrison also asked for "updates on the standing workstation," pressing that even though Geico had reimbursed her for the standing station she originally purchased, WTW had recommended a different one. ECF No. 36-42. The next day, Geico's leave administrator confirmed she would submit a request for the recommended adjustable workstation. *Id*. A month went by before REFM personnel resumed their inquiry in late July

2016.  ECF No. 36-43.  After resolving confusion among various personnel as what specific equipment Harrison had requested, Geico finally installed the new workstation on October 10, 2016.  ECF No. 36-49.

### C. Transfer from Production Support to Automated Testing Team

In August 2016, Plaintiff was transferred from the Production Support Team to the Automated Testing Team.  ECF No. 36-6 at 8-9.  Before the transfer, Harrison admits that she was "very tired" of "working 24/7, seven days a week" as a senior programmer analyst, and that she no longer wanted to serve in that role.  *Id.* at 9-10.  She had, in fact, communicated this desire to Geico's Director of Systems Engineering, who then transferred Harrison to the Automated Testing team because he thought it would "better align[]" with her preferences.  ECF No. 36-78 at 3.  The transfer did not impact her salary or benefits, and Harrison agreed that the transfer was a "welcome change."  ECF No. 36-6 at 11; ECF No. 36-78 at 3.

### D. Second Leave of Absence and Work from Home Request

On January 26, 2017, Harrison sought an additional leave of absence for a knee injury that required surgery.  ECF No. 36-50; ECF No. 36-6 at 32; ECF No. 36-57 at 3.  Geico approved her leave through February 6, 2017, and asked Harrison to provide a doctor's note should she need additional leave.  ECF No. 36-53 at 2.  Harrison returned to the office in February 2017, and informed Geico's leave administrator that because of her knee and back injuries, her doctor recommended that she remain on light duty permanently.  ECF No. 36-54.  Harrison also asked whether she could work from home or on a part-time basis, although this request had not come from her doctor.  *Id.*; ECF No. 36-55; ECF No. 36-6 at 35; ECF No. 36-57 at 3.

After Harrison submitted an accommodation letter in April to Geico that recommended a light duty schedule, Geico confirmed with Harrison that her provider had not recommended telework.  ECF No. 35-56; ECF No. 36-6 at 36-37; ECF No. 36-57 at 2-3.  Harrison did not respond, but instead separately informed Geico that she would likely need to take another leave of absence for full knee replacement surgery in September 2017.  ECF No. 36-57 at 1.  On April 26, 2017, Harrison formally requested a leave of absence for September 2017, which Geico approved.  ECF No. 36-58.

Two months later, in June 2017, Harrison submitted a note from her physical therapist that recommended she stay on her light duty schedule but work remotely.  ECF No. 36-60.  Harrison provided a second note from a different healthcare provider on July 5, 2017, advising that she work at least two days a week remotely which would mean she spends one day every other week in the office.  ECF No. 36-61.  About two weeks later, that same provider proposed yet a third schedule where Harrison would work five days a week, four hours per day, with one day per week in the office.  ECF No. 36-64.

During this time, Geico personnel were still under the impression that Harrison would be taking a leave of absence in September for her knee replacement surgery, which Harrison admitted, if successful, may obviate the need for her to work from home or need a lighter duty schedule.  ECF No. 36-58; ECF No. 36-6 at 51.  Several Geico personnel brainstormed job duties to assign Harrison based on a twenty-hour-a-week position done mostly from home.  ECF No. 36-67.  The IT director provided Geico's leave administrator with a tentative task list for Harrison, modelled off of the duties of another IT employee who worked twenty hours a week with a slightly lower pay grade than Harrison—a "65" versus her "68" pay grade.  *Id.*

Geico next contacted Harrison regarding her scheduled leave of absence for her knee replacement surgery on September 12, 2017.  ECF No. 36-65.  Harrison informed Geico that her surgery had been canceled so that her knee could "continue to… heal."  *Id*.

### E.      Unapproved Leave

On October 18, 2017, Harrison asked to take personal leave from November 20 to November 27, 2017, and on January 2, 2018.  ECF No. 36-70.  Her direct supervisor approved the leave but reminded Harrison that the team manager also needed to approve the "leave code."  *Id*.  On November 17, Harrison's manager did not approve her personal leave request.  He advised Harrison that because she had exhausted her personal leave, she could not simply take the requested days off, and if she did, she would be marked as having failed to report.  ECF No. 36-6 at 62-63.  Nonetheless, Harrison did not report to work for four consecutive scheduled days in November.  *Id.* at 63.

When Harrison returned on December 4, her manager escorted her to human resources and had her meet with a Geico compliance officer.  ECF No. 38-12.  According to Harrison, the meeting "emotionally disturbed" her because this was her first disciplinary infraction during her twenty-year tenure at Geico.  *Id.*  Geico ultimately issued Harrison a written warning, explaining that the employee handbook required her to obtain her manager's approval before taking leave, and that she had indicated on her timesheet that her leave was "state mandated," which was untrue.  *Id.*  Geico advised Harrison that there could be "no further instances of unapproved time off."  *Id.*

### F.      Telework Approval and Retirement

On December 14, 2017, Geico informed Harrison that her request to work from home four days a week had been approved.  ECF No. 38-12 at 6; *see also* ECF No. 36-66.  Based on

the modified position, Geico would change Harrison's pay grade from 68 to 65, resulting in a $7,000 salary reduction. *Id.* For the day that Harrison would be expected to come to the office, she was reassigned a parking spot from her longtime garage space to a spot "right in front" of the office building reserved for visitors and disabled persons. *Id.*; ECF No. 38-21; ECF No. 36-6 at 53-54, 75. When Harrison expressed confusion as to why her request warranted a change in salary, Geico responded that working from home at her current pay grade of 68 could not be accommodated, but that it could accommodate her working from home at a pay grade of 65. ECF No. 36-66; ECF No. 36-6 at 55-56. This explanation aligned with Harrison's then understanding that her duties and responsibilities would change once permitted to work from home. ECF No. 36-6 at 75.

On December 18, 2017, Harrison informed Geico's Human Resources that, per the company handbook, she was giving her 90-day notice of retirement, which would be effective on March 18, 2018. ECF No. 36-16. She added "[i]f it's possible to retire sooner, please let me know." *Id.*; *see also* ECF No. 36-6 at 69. Having considered the prospect of retiring for years, ECF No. 36-6 at 67; ECF No. 40-6 at 2-3, and making several inquiries about "early out" options in late 2017, Harrison now maintains that Geico's "mistreatment" precipitated her decision to retire. ECF No. 36-11; ECF No. 36-15; ECF No. 38-12 at 7. On December 21, 2017, Harrison's manager informed her that her retirement was effective immediately and that she would be paid through January 19, 2018. ECF No. 36-6 at 70.

On April 8, 2018, Harrison filed her charge of disability discrimination against Geico with the Maryland Commission on Civil Rights. ECF No. 38-22; ECF No. 36-1 at 22. Harrison next filed this action on April 26, 2019, asserting claims of disability discrimination, failure to accommodate, constructive discharge, and retaliation in violation of the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601, *et seq.*; and Maryland's Workers' Compensation Act ("MWCA"), Md. Code Ann., Lab & Empl. § 9-1105. ECF No. 1. Geico answered the Complaint and now moves for summary judgment. ECF No. 10 & ECF No. 36.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). While a "mere scintilla of proof . . . will not suffice to prevent summary judgment," *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003), a court should not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances," *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quotation omitted). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is warranted. *Celotex*, 477 U.S. at 322. Employing this standard, the Court addresses the propriety of summary judgment as to Harrison's claims.

### III.    ANALYSIS

Geico offers several reasons why summary judgment should be granted in its favor.  The Court need not address them all because those discussed below fully resolve the motion.

#### A.    Time-Barred Claims

Geico first contends Harrison's ADA and MFEPA claims arising from her accommodation request for a chair and workstation and her August 2016 lateral transfer are time-barred.  ECF No. 36-1 at 21.[1]  The Court agrees.

Both the ADA and MFEPA require that a plaintiff exhaust administrative remedies prior to filing suit.  *See Rowlette v. District Health*, No. RDB-18-2706, 2019 WL 5696841, at *3 (D. Md. Nov. 4, 2019) (citing *Magness v. Harford Cty.*, ELH-16-2970, 2018 WL 1505792, at *9-10 (D. Md. Mar. 27, 2018)); *Bales v. Maryland Judiciary/Administrative Office of the Courts*, No. JFM-15-03293, 2016 WL 6879902, at *7-8 (D. Md. Nov. 22, 2016).  Accordingly, to preserve these claims, Harrison must first file a formal charge with the Equal Employment Opportunity Commission ("EEOC") or with the Maryland Commission on Human Relations ("MCHR") within 300 days of the alleged misconduct.  *Fisher v. J.O. Spice & Cure Co., Inc.*, No. CCB-19-1793, 2020 WL 363347, at *2 (D. Md. Jan. 22, 2020) (citing 42 U.S.C. § 2000e-5(e)(1); *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F, App'x 256 (4th Cir. 2008)); *see also Bishop v. Bd. of Educ. of Calvert Cty.*, No. DKC-11–1100, 2011 WL 2651246, at *3-4 (D. Md. July 5, 2011).

---

[1] Defendant argues that Harrison's failure to exhaust administrative remedies warrants dismissal for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 36-1 at 20.  However, the Supreme Court recently held that the administrative exhaustion requirements in the Title VII context are "more properly considered 'claim-processing rules,' which, although not jurisdictional in nature, nevertheless must be followed."  *Rowlette v. District Health*, No. RDB-18-2706, 2019 WL 5696841, at *2 (D. Md. Nov. 4, 2019) (citing *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019)). The Court extends this analysis to Harrison's claims and so will consider this challenge as one aimed at their legal sufficiency.  *See* Fed. R. Civ. P. 56.

Harrison filed her formal charge on April 8, 2018.  ECF No. 38-22.  Accordingly, any discrete acts of wrongdoing covered under these statutes that took place beyond the 300-day period dating back to June 12, 2017 are time-barred.  *See Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir. 1996).  Turning first to Counts II and VI, each rely centrally on the theory that Geico's failure to timely accommodate Harrison's request for a more supportive chair and adjustable workstation violated the ADA and MFEPA.  ECF No. 1 ¶¶ 40, 71.  It is undisputed that Harrison received the chair by August 16, 2016, and her second workstation by October 10, 2016.  ECF No. 36-47; ECF No. 36-49.  Had Harrison wished to challenge the sufficiency of these accommodations, she was required to file the claims far sooner, as the claims accrued long before June 12, 2017.  Each claim, therefore, is time-barred.

In response, Harrison insists that each denial of accommodation is part of a "continuing violation" sufficient to render them timely filed.  ECF No. 38-1 at 7.  The Court cannot agree.  As made clear in *National R.R. Passenger Corporation v. Morgan*, an employee must file a charge of discrimination within the appropriate limitations period as to each discrete act of discrimination that occurred.  536 U.S. 101, 122 (2002).  More specifically, a failure to accommodate a plaintiff's request constitutes a "discrete act."  *Hill v. Hampstead Lester Morton Court Partners LP*, 581 Fed. Appx. 178, 180-8s1 (4th Cir. 2014); *see also Johansson v. Prince George's Cty. Pub. Sch.*, Civ. No. DKC-13–2171, 2014 WL 3345054, at *4 (D. Md. July 7, 2014) (citing cases).  Accordingly, although "consideration of incidents … outside the time bar" may be permitted "when those incidents are part of a single, ongoing pattern of discrimination," *Johansson*, 2014 WL 3345054, at *4 (quotation omitted), discrete acts "are not actionable if time-barred, even when they are related to acts alleged in timely filed charges."  *Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) (quoting *Morgan*, 536 U.S. at 113).

Harrison's requests for her chair and workstation are the very kind of discrete acts which, as a matter of law, are ready for challenge when denied. Viewing the record most favorably to Harrison, she received the chair and workstation about which she now complains as of October 10, 2016. This is well beyond the 300-day window, and thus her failure to file a timely formal charge bars the claims from proceeding.

In an effort to avoid this very outcome, Harrison asserts for the first time in her opposition that she is pursuing a failure-to-accommodate claim based on the mishandling of her telework request in 2017. ECF No. 38-1 at 19. But nowhere did she plead this allegation as a basis for relief. ECF No. 1. Rather, even when reading the Complaint most favorably to her, Harrison chose to limit her accommodation claims to her 2016 request for a chair and workstation. *Id.* ¶¶ 40, 71. Plaintiff cannot now amend the Complaint through pleadings in the hopes of resurrecting a claim that is a dead letter.[2] *See vonRosenberg v. Lawrence*, 849 F.3d 163, 166 n.1 (4th Cir. 2017) (quoting *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (holding a "plaintiff may not amend his complaint through arguments in his

---

[2] Alternatively, summary judgment in Defendant's favor is warranted as to the merits of this new claim. The evidence, viewed most favorably to Harrison, does not support that any purported delay in granting her telework request amounted to a failure to accommodate. ECF No. 40 at 10; *see also Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019). Plaintiff submitted conflicting telework requests in June and July 2017 and against the backdrop of needing leave to accommodate her knee surgery in September. Harrison also waited until mid-September to tell Geico that her surgery had been canceled. ECF No. 36-6 at 51; ECF No. 36-58; ECF No. 36-60; ECF No. 36-61; ECF No. 36-64; ECF No. 36-65. Harrison, in effect, whipsawed Geico with contemporaneous and conflicting accommodation requests. Even more fatal to the claim, Geico repeatedly extended Harrison's light duty schedule and then granted her telework request in December 2017. ECF No. 38-12 at 6. Based on this record, viewed most favorably to Harrison, a failure-to-accommodate claim based on her telework request fails as a matter of law. *See Pierce v. Nat'l Archives & Records Admin.*, No. TDC-19-2876, 2020 WL 7640835, at *2 (D. Md. Dec. 23, 2020) (noting "the length of the delay, the reasons for the delay, whether the employer has offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good faith") (citation omitted).

brief in opposition to a motion for summary judgment"); *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997).

Harrison's disability discrimination and retaliation claims related to her team transfer are also time-barred. ECF No. 1 ¶¶ 16, 34, 46, 65, 77 (Counts I, III, V, VII). When viewing the record most favorably to Harrison, the Court cannot find that this transfer is part of any legally cognizable continuing course of conduct. Rather, the transfer amounts to a discrete act that occurred well outside the 300-day window. *See U.S. E.E.O.C. v. Phase 2 Invs. Inc.*, 310 F. Supp. 3d 550, 575 (D. Md. 2018) (quoting *Morgan*, 536 U.S. at 113). Thus, to the extent these claims rely on Harrison's 2016 transfer as an instance of either discrimination or retaliation, they are time-barred.[3]

### B.     Claims Based on Theory of Constructive Discharge

Defendant also challenges Harrison's averred constructive discharge claim, a theory which underlies Counts I (disability discrimination - ADA), III (retaliation - ADA), IV (disability discrimination- ADA), V (disability discrimination - MFEPA), VII (retaliation - MFEPA), VIII (disability discrimination - MFEPA), IX (retaliation - MWCA), and X (retaliation - MWCA). ECF No. 36-1 at 26. The constructive discharge doctrine applies when an employer discriminated against an employee to such a degree that the employee reasonably felt compelled to resign. *See Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (quotation omitted). When an

---

[3] Alternatively, Plaintiff has not raised a genuine factual dispute that the transfer was an adverse employment action. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (explaining that a *prima facie* case for retaliation requires showing that employer took "adverse employment action"); *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005) (same for discrimination claim); *see also Nelson-Rogers v. Kaiser Permanente*, Civ. No. GJH-17-3326, 2020 WL 917067, at *7 n.6 (D. Md. Feb. 25, 2020) ("[C]ourts generally treat the analysis of claims under the ADA and FEPA as coterminous."). Indeed, Plaintiff admitted that she was tired of being on call 24/7, that she was looking for a transition, and that she viewed the transfer as a "welcome change." ECF No. 36-6 at 8-11; ECF No. 36-78 at 3. The transfer visited no adverse outcome on her salary or benefits. ECF No. 36-78 at 3. Thus, the claim too fails because no reasonable factfinder could conclude it constitutes an adverse employment action.

"employee resigns in the face of such circumstances," anti-discrimination statutes including the ADA treat that resignation as "tantamount to an actual discharge." *Id.* at 1776-77. However, because "constructive discharge claims are susceptible to abuse by those who voluntarily leave their employment," courts have insisted that they be "strictly cabined." *Alba v. Merrill Lynch & Co.*, 198 Fed. Appx. 288, 294 (4th Cir. 2006) (finding unfair criticism of plaintiff's work, threats of termination and rescission of benefits, and disconnecting plaintiff from computer system constitute "stressful" but not "intolerable" conditions); *see also Muench v. Alliant Foodservice, Inc.,* 205 F. Supp. 2d 498, 505-06 (D. Md. 2002) (employer's comments that plaintiff should quit his job and occasionally berating plaintiff for his injuries do not establish constructive discharge); *Cooper v. Smithfield Packing Co., Inc.*, 724 Fed. Appx. 197, 199 (4th Cir. 2018) (finding an employer's repeated invitations to plaintiff to "sleep with him, threatening her when she refused …, physically brushing up against her, [and] demeaning her relationship with her husband" were not sufficiently intolerable).

To support her ADA, MFEPA, and MWCA claims under a constructive charge theory, Plaintiff must show that Geico deliberately made her working conditions so "intolerable that a reasonable person in the employee's position would have felt compelled to resign."[4] *Green*, 136 S. Ct. at 1776–77 (2016); *see also Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 425 (4th Cir. 2014) (requiring deliberateness by the employer and objective intolerability of the working conditions). Given the "high standard for constructive discharge claims," *Muench*, 205 F. Supp. 2d 498 at 505-06, "heartfelt 'dissatisfaction with work assignments, a feeling of being unfairly criticized,

---

[4] *See Nelson-Rogers*, 2020 WL 917067, at *7 n.6 (combining analysis for ADA and FEPA claims). The MWCA also adopts the same standard for constructive discharge. *See Muench*, 205 F. Supp. 2d at 505-06 (test is whether "the employer has deliberately caused or allowed the employee's working conditions to become so intolerable that a reasonable person in the employee's place would have felt compelled to resign").

[and] difficult or unpleasant working conditions,' []fall[] short of objective intolerability," *Boston v. Mabus*, No. PX-15-0132, 2016 WL 7212563, at *7 (D. Md. Dec. 13, 2016) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004); quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)). Likewise, "[a] slight decrease in pay coupled with some loss of supervisory responsibilities" is "insufficient" to show constructive discharge. *Carter*, 33 F.3d at 459.

Plaintiff presses that the claim survives challenge when considering Geico's delaying provision of "necessary modified working equipment," transferring her to another department, reducing her salary by $7,000, disciplining her for failing to report after she had her leave approved, and removing her "indoor parking spot that she held for nineteen years." ECF No. 1 ¶¶ 52, 83, 90. Viewing the constellation of events most favorably to Harrison, they simply do not satisfy the "high standard" for showing she had been subject to a constructive discharge. *Muench*, 205 F. Supp. 2d at 505–06.

To begin, Harrison's claims arising from her request for office equipment and her 2016 transfer are time-barred. *See* Section III.A. But even if this Court were to consider them,[5] they do not help Harrison's cause. By the time Harrison resigned in December 2017, she had received and was using her equipment of choice for over a year. The Court cannot see how Geico, having granted Harrison what she needed well before her announced retirement, somehow made her working environs intolerable.

---

[5] Plaintiff makes the unpersuasive argument that certain time-barred acts from 2016—specifically Geico's failure to timely provide a chair and workstation and her involuntary transfer—contributed to the intolerable working conditions that compelled her resignation more than one year later. The Supreme Court's decision in *Morgan* strongly suggests that time-barred discrete acts cannot form part of a claim for constructive discharge. 536 U.S. at 113. But because *Morgan* does not expressly address whether the conditions that give rise to a constructive discharge, to the extent they are discrete acts, must also be timely, out of an abundance of caution this Court will consider them. *Cf. Green*, 136 S. Ct. at 1776 (finding that limitations period for constructive discharge claim begins to run at time of resignation).

Plaintiff next takes issue with her team transfer—a lateral move with no diminution in pay or benefits and that she agreed was a "welcome change." ECF No. 36-6 at 8-11; ECF No. 36-78 at 3. Harrison offers no evidence from which a reasonable factfinder could conclude that this transfer granted to Harrison to accommodate her request, contributed to an intolerable work environment. *See Mabus*, 2016 WL 7212563, at *8.

Nor does Geico's December 2017 disciplinary action against her save the claim. It is undisputed that Harrison missed four consecutive days of work—not out of medical necessity—after her manager warned her that doing so would be a failure to report. Harrison marshals no evidence that this warning was unjustified. Nor do her "feeling[s] of being unfairly criticized" amount to objective intolerability. *Id.* at *7; *see also Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 186–87 (4th Cir. 2004); *Taylor v. Patuxent Inst.*, No. CCB-09-111, 2009 WL 4349092, *5 (D. Md. Nov. 30, 2009).

As for the $7,000 salary reduction, this change occurred after Plaintiff requested that she telework, and even though she knew such accommodation would alter her hours and responsibilities. *See* ECF No. 38-12 at 6; ECF No. 36-66. This accommodation mirrored the schedule of another employee's accommodation who was paid at a lower grade. ECF No. 36-67. When Plaintiff pressed as to why her pay grade had changed, Geico explained that it could not accommodate her request to work from home and part-time at her current pay grade, but could at the lower rate of pay. ECF No. 36-66; ECF No. 36-6 at 55-56. Viewing the facts most favorably to Harrison, the "slight decrease in [her] pay" to accommodate her job function does not amount to an intolerable working condition. *James*, 368 F.3d at 378 (quoting *Carter*, 33 F.3d at 459); *see also E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 944 (4th Cir. 1992); *cf. Guice–Mills v. Derwinski*, 967 F.2d 794, 798 (2d Cir. 1992) ("When an employer offers an employee an

alternative position that does not require a significant reduction in pay and benefits, that offer is a 'reasonable accommodation' virtually as a matter of law.").

Plaintiff also takes umbrage with the loss of her indoor parking spot. Plaintiff admits that, in exchange, she was given a disabled parking spot directly in front of the building's main entrance. ECF No. 36-6 at 53-54. To be sure, while she may have coveted her old spot as a point of pride, Geico's reassigning her to a spot specifically to accommodate her physical limitations can hardly contribute to an intolerable working condition.

Lastly, Harrison maintains that Geico's untimely grant of her telework request in December 2017 contributed to her constructive discharge. ECF No. 38-1 at 13. The Court is at a loss to understand this argument. Harrison requested telework. ECF No. 36-64. She received permission to telework. ECF No. 38-12 at 6; ECF No. 36-66. And only *after* she received such permission does she claim that she retired to escape an intolerable work situation. *Id.*; ECF No. 36-16. No reasonable factfinder could credit this unreasonable claim.

Further undermining any inference that the above incidents—alone or collectively—produced an intolerable working environment, the Court need go no further than Harrison's own conduct when she announced her retirement. Harrison told Geico that she wanted to have a big retirement party at the office and invite the "boat load" of people she knew. ECF Nos. 36-76 & 36-77. A desire to celebrate her departure with (and at) the very corporation that allegedly made her work life intolerable simply cannot be squared. The Court must grant summary judgment for all claims that rely on a theory of constructive discharge.

## IV.   CONCLUSION

Because Plaintiff relies on either time-barred acts or a theory of constructive discharge to establish a necessary element of each claim, the Court finds that awarding summary judgment to

Geico on all counts is proper.  ECF No. 1 ¶¶ 34, 40, 46, 53, 65, 71, 77, 84, 91, 98.  Geico's motion for summary judgment (ECF No. 36) is therefore GRANTED.  A separate Order follows.


   2/4/2021                                                                                      /s/               
Date                                                                                           Paula Xinis
                                                                                             United States District Judge